UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-507-RJC-DCK

| | |
|---|---|
| AYMAN KAMEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| 5CHURCH, INC., PATRICK WHALEN, ) | |
| MAP MANAGEMENT OF CHARLOTTE, ) | |
| LLC, and ALEJANDRO TORIO, ) | |
| ) | |
| Defendants. ) | |
| ) | <u>ORDER</u> |
| ) | |
| 5CHURCH INC., and 5CHURCH ) | |
| CHARLESTON, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Ayman KAMEL, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on Plaintiff Ayman Kamel's ("Kamel") Motion in Limine Regarding Documents Produced 109 Days After the Completion of Discovery. (Doc. No. 104.)

I.   BACKGROUND

On September 12, 2018, Kamel served his first set of interrogatories on Defendants. (Doc. No. 105-2.) Kamel's second interrogatory asked Defendants to provide a computation of each category of damages claimed by Defendants and to identify the documents and other evidentiary material on which each computation of

damages is based, including any and all material bearing on the nature and extent of the sums owed to Defendants. (Doc. No. 105-2, at 5–6.) Defendants served their answers to Kamel's first set of interrogatories on November 21, 2018, which stated, in relevant part, that Defendants sought "actual damages resulting from Kamel's unauthorized access to 5Church Charlotte's e-mail accounts." (Doc. No. 105-3, at 4.)

Pursuant to court order, the deadline for the parties to supplement their discovery responses and Rule 26(a) disclosures, as required by Rule 26(e), was February 8, 2019, (Doc. No. 37, at 3), and the deadline for the parties to complete discovery was April 26, 2019, (Doc. No. 61).

Notwithstanding these deadlines, on August 5, 2019—178 days after the supplementation deadline—Defendants served amended disclosures on Kamel that stated, in relevant part:

> The categories of damages sought by Defendants include: . . . (ii) actual damages in the amount of $15,691.41 resulting from Kamel's unauthorized access to 5Church Charlotte and 5Church Charleston's e-mail accounts including: $6,968.75 in investigatory fees to Reliance Forensics, LLC, $5,942.53 in fees to Kinetic Technologies, LLC for installation and repair of a firewall, $285.00 in fees to Mtel-One Inc. for the installation of a new security system, and $2,495.13 in man hours accrued by 5Church Charlotte and 5Church Charlotte employees; (iii) actual damages in the amount of $13,770.36 resulting from Kamel's implementation of an e-mail forwarding rule including: $4,750.00 in investigatory fees to Reliance Forensics, LLC, $4,295 in investigatory legal fees to Parker Poe Adams & Bernstein LLP, and $4,725.36 in man hours accrued by 5Church Charlotte and 5Church Charlotte employees; . . . .

(Doc. No. 110-1, at 5.) In addition, on August 13, 2019—109 days after the discovery deadline—Defendants produced 174 pages of documents to Kamel. (Doc. No. 105-1.) These documents included: an invoice from Peritus IT Solutions dated July 10, 2017

in the amount of $136.74, an invoice from Peritus IT Solutions dated September 27, 2017 in the amount of $227.91, an invoice from Kinetic Technologies, LLC dated October 30, 2017 in the amount of $5,942.53, an invoice from Mtel-One Inc. dated July 11, 2017 in the amount of $285, an invoice from Reliance Forensics, LLC dated December 2, 2017 in the amount of $6,968.75, and approximately fifty-three bounce back emails between April 21, 2016 and March 21, 2017 to Defendant Patrick Whalen ("Whalen") and other employees of Defendants stating that the email had failed to deliver to Kamel's Gmail address. (Doc. No. 105-1.)

Kamel filed the instant motion on August 21, 2019 to preclude Defendants from introducing these documents into evidence at trial, which is set to begin on November 4, 2019. (Doc. No. 105.)

## II. DISCUSSION

Rule 26(a) requires a party, at the outset of the litigation and "without awaiting a discovery request," to provide to the opposing parties "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). Under Rule 26(e), a party must supplement or correct its Rule 26(a) disclosures and any other discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other

3

parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

A party's failure to comply with Rule 26(a) or (e) implicates Rule 37(c)(1), which states:

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1). "District courts are accorded broad discretion in determining whether a party's nondisclosure or untimely disclosure of evidence is substantially justified or harmless." Bresler v. Wilmington Tr. Co., 855 F.3d 178, 190 (4th Cir. 2017) (quotation marks omitted). The Fourth Circuit has held that

> in exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003). "The first four factors listed above relate primarily to the harmlessness exception, while the last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception." Bresler, 855

4

F.3d at 190. District courts are not required, however, to expressly consider each factor in deciding whether a nondisclosure or untimely disclosure was substantially justified or harmless. Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014); Hoyle v. Freightliner, LLC, 650 F.3d 321, 330 (4th Cir. 2011).

Here, it is undisputed that Defendants failed to timely supplement its Rule 26(a) disclosures and discovery responses as required under Rule 26(e). Defendants did not supplement its disclosures to provide a computation of damages until August 5, 2019—which was 178 days after the supplementation deadline.[1] Moreover, Defendants did not produce the supporting invoices until August 13, 2019—which was 186 days after the supplementation deadline and 109 days after the close of discovery. Defendants fail to offer any explanation for their untimely disclosure, much less a substantially justified one. However, in the exercise of its broad discretion, the Court concludes that Defendants' untimely disclosure may be rendered harmless by allowing Kamel the opportunity to take the deposition of any witness regarding the invoices and Defendants' damages computations. Allowing the evidence will not disrupt the trial, and any surprise to Kamel from the invoices is limited because Whalen testified during his deposition that Defendants' damages include paying to transfer the email server and engaging consultants to identify and fix the problem, which is reflected in the invoices. This limited surprise can be cured by allowing Kamel to depose any witness regarding the invoices and Defendants'

---

[1] There is no evidence in the record that Defendants ever supplemented their responses to Kamel's first set of interrogatories, which also asked for damages computations and the documents on which such computations were based.

5

damages computations. In addition, in its discretion under Rule 37(c)(1) and 37(b), the Court awards Kamel his reasonable attorney's fees and costs in pursuing this motion and scheduling and taking these eleventh hour depositions necessitated by Defendants' failure to comply with Rule 26(e) and this Court's scheduling order.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that Kamel's Motion in Limine Regarding Documents Produced 109 Days After the Completion of Discovery, (Doc. No. 104), is **GRANTED in part** and **DENIED in part**. Defendants shall make available to Kamel any witness Kamel indicates for deposition regarding the invoices produced on August 13, 2019 and Defendants' damages computations disclosed on August 5, 2019. Such deposition shall be concluded no later than 5:00 p.m. on Friday, November 1, 2019. Upon compliance with this directive, Defendants may introduce the untimely produced documents into evidence at trial. Defendants shall also pay Kamel his reasonable attorney's fees and costs incurred in pursuing this motion. Kamel shall submit a supporting affidavit or other evidence of such fees and costs within **twenty-one (21) days** of this Order. Defendants shall have **fourteen (14) days** from Kamel's submission to submit a response thereto.

Signed: October 24, 2019

Robert J. Conrad, Jr.
United States District Judge